ROSA SILVERS ET AL. V. L. B. WELCH.

No. 6581.   Decided March 11, 1936.
(91 S. W., 2d Series, 686.)

*Ditzler H. Jones,* of Uvalde, for plaintiffs in error.

Where no intention not to return to the homestead has been formed the homestead character is not destroyed, though another home has been acquired, for absence is merely a circumstance tending to show abandonment, and will not be conclusive where there are other circumstances showing an intent to return. Wiener v. Zweib, 128 S. W., 699; Foreman v. Meroney, 62 Texas, 723; Ran v. City National Bank, 272 S. W., 510; Robinson v. McGuire, 203 S. W., 415; Reece v. Renfro, 68 Texas, 194, 4 S. W., 545.

*Morriss & Morriss,* of San Antonio, for defendant in error.

Where plaintiffs have abandoned their homestead and have acquired a new one, which they later sold, and did not return to the former homestead, but lived elsewhere and did not by any overt act manifest an intention to return to it or again make it their homestead until after same was levied upon and sold at execution sale, the plea of homestead cannot avail to them to defeat title regularly acquired at the execution sale. Scottish American, etc., Co. v. Milner, 30 S. W. (2d) 582; Johnson v. Burton, 87 S. W., 181; Slavin v. Wheeler, 61 Texas, 654; 29 C. J., 944.

MR. JUDGE HICKMAN delivered the opinion of the Commission of Appeals, Section A.

Rosa Silvers, joined pro forma by her husband, Zeno Silvers, herein jointly referred to as the Silvers, brought this suit against L. B. Welch in trespass to try title and to set aside, as a cloud upon her title, a sheriff's deed under which Welch claimed title. The land was sold by the sheriff under execution issued on a joint and several judgment in favor of Welch against the Silvers. They prevailed in the trial court, but, on appeal to the Court of Civil Appeals at San Antonio,

the judgment was reversed and judgment rendered in favor of Welch. 59 S. W. (2d) 879. The only question presented to this Court for decision is whether the land was the homestead of the Silvers at the time of the sale and, as such, was exempt from forced sale.

The appeal is upon findings of fact and conclusions of law filed by the trial judge. No statement of facts accompanies the record. By these findings it is disclosed that the land in controversy contains 160 acres located 10 miles north of Leakey, in Real County. It was acquired by Mrs. Silvers by deed of gift from her father prior to her marriage to Mr. Silvers. At that time she was a widow and was residing upon this land with her children by her first husband. After the marriage of the Silvers, in 1917, they continued to live upon same as a homestead for about one year. In 1918 they purchased 853½ acres of land in Real County northeast of Leakey and 12 or 15 miles distant from the land in question. They moved upon this newly acquired tract, formally designated 200 acres thereof as their homestead, and fixed a deed of trust lien upon the 160 acre tract. The trial court finds that they "established their homestead" upon the newly acquired tract.

In 1922 they reconveyed the 853½ acre ranch to the one from whom it had been purchased in consideration of the cancellation of the purchase money notes executed by them at the time of its acquisition. By this transaction the deed of trust lien on the 160 acre tract which was given as additional security to the vendor's lien notes, was released. The findings then recite:

"* * * and shortly thereafter the said Rosa Silvers and Zeno Silvers, plaintiffs in this case removed from the said 853½ acre ranch with their family to a place they temporarily rented from G. E. Harrison at Leakey, Texas, shortly thereafter moving to another place Southwest of Leakey, and then to another place near by, and thence to another place in the same neighborhood, thus living temporarily on several places until sometime about the latter part of 1923 when they leased and moved on to the place of Mr. Arlin Tom South of Leakey where they lived about three years. Thereafter they moved to the place of _____, where they have resided for about six years, which is a small farm about three miles South of Leakey, at which place they have continuously resided for six years until this trial, and where they still reside. The said Rosa Silvers testified as follows: 'Leased it, I guess, worked it for the use of it six years. Lived there five or six

years. Before that I was living on the Arlin Tom place for three years.'

"During the time the plaintiffs have lived on said place they have had their family with them.

"10. I further find as a fact that the plaintiffs have not resided (individually) on the 160 acres of land in question since they moved away from the same since about 1918 and moved on to the 853½ acre ranch that they purchased from the said R. D. Harper, but I further find in this connection as a matter of fact that the plaintiffs Zeno Silvers and Rosa Silvers, have never acquired nor owned any other land since they reconveyed the 853½ acres of land to R. D. Harper in 1922 and that during most of said time since 1922 that the plaintiffs have had one of their sons living on the place in question and have had running thereon some livestock belonging to them and have been using the same for the purpose of grazing and pasturing some of their livestock such as a few head of cows and some goats. The witness Rosa Silvers having testified as follows:

" 'I took the goats up to the other place and turned them loose. Took them up last December, about that time. Yes, we have had stock up there since we bought the Harper place. All the cattle we had up there at that place, two or three head. He has been keeping stock on my place off and on three or four years. Living out there and running the stock. I have six children, two by Mr. Silvers and four by Mr. Preist. At the time of the sale my son was living on the land, had his stock there all the time for ten years. Goat pens and a little garden. I lived there six or seven years, I guess, before 1918.'

"* * *

"12. I further find as a fact that since the date in 1922 when Zeno Silvers and Rosa Silvers reconveyed to R. D. Harper 853½ acres of land that they had purchased from him, on which they had designated a homestead, that neither of them have owned any other land or any city property save and except the 160 acres of land belonging to said Rosa Silvers as her separate estate and that since said date she has never repudiated her homestead rights in said 160 acres. The foregoing are all of the material facts in evidence."

Upon these findings the trial judge concluded that the Silvers were entitled to judgment.

█ It is apparent that the findings preclude any question as to whether they abandoned the 160 acre tract as a homestead in 1918. The trial judge found as a fact that when they acquired

the larger tract they "established their homestead" thereon. As above noted, there is no statement of facts in the record and, of course, in the absence thereof, no challenge could be made of this fact finding. A family is not entitled to two homesteads at the same time. Constitution of Texas, Art. 16, Sec. 51. Achilles v. Willis, 81 Texas, 169, 16 S. W., 746. When the Silvers established their new homestead, they abandoned the old one as a matter of law. It is well recognized that abandonment is largely a question of intention, and that the mere fact of acquiring and moving upon another piece of property does not conclude the question of abandonment; but here we have a finding of the establishment of a homestead on the newly acquired tract. That finding is a definite and conclusive determination that the first homestead was abandoned.

■ The only remaining question is whether the Silvers, after they reconveyed the larger tract, reinvested the 160 acre tract with the homestead character. In determining this question the fact that it was at one time their homestead is not material. To reinvest that tract with the homestead character requires the same overt acts evidencing intention as are required to invest property with that character in the first instance. The opinion of the Court of Civil Appeals by Justice (now Chief Justice) Smith well states the question in this language:

"In this situation the old place could not be restored to the status and given the renewed character of a homestead except by overt acts of the Silvers coupled with and in pursuance and manifestation of an intention on their part to make it their permanent homestead."

An examination of the fact findings discloses a total absence of findings of any overt acts evidencing an intention to make this tract their homestead. They never reoccupied it. If they ever intended again to occupy it as a homestead, the findings are silent with reference thereto, and no acts of preparation to occupy were performed. Mere ownership alone is not sufficient to constitute premises a homestead. The limited use to which they put this land did not even raise the issue that they occupied same. They actually occupied rented premises remote therefrom. Absent actual occupancy or intent to occupy coupled with overt acts of preparation evidencing that intention, no homestead right attaches.

■ In granting the writ of error in this case the court made this notation: "We are inclined to the view the Court of Civil Appeals should not have rendered after reversal." A

more mature consideration of the record has convinced us that we would not be authorized to remand the cause. The parties saw fit to bring the record to the appellate courts without a statement of facts, presenting only questions of law. We are unable to say, in the absence of a statement of facts, that the case has not been fully developed, or that any just reason exists for a retrial. The Court of Civil Appeals correctly decided the questions of law and rendered the judgment which followed as a consequence of its decision. That judgment which followed as a consequence of its decision. That judgment should not arbitrarily be disturbed, and it is, therefore, our order that it be affirmed.

The judgment of the Court of Civil Appeals is affirmed.

Opinion adopted by the Supreme Court March 11, 1936.